The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: July 7, 2026

**No. A-1-CA-41067**

**IN THE MATTER OF PETITION FOR EXPUNGEMENT FOR C.T.,**

Petitioner-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clara Moran, District Court Judge**

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellant

John Kloss, Deputy District Attorney
Albuquerque, NM

for Appellee State of New Mexico

Stelzner, Winter, Warburton, Flores & Dawes, P.A.
Dan E. Gershon
Sofia E. Flores
Albuquerque, NM

for Appellee NM Department of Public Safety

**OPINION**

**IVES, Judge.**

{1}     After being arrested for and charged with a first offense of driving while under the influence of intoxicating liquor (DWI), contrary to NMSA 1978, Section 66-8-102(C) (2008, amended 2016), Petitioner C.T. pleaded guilty and received a deferred sentence. *See* § 66-8-102(E) (permitting deferment of sentence for a first DWI); NMSA 1978, § 31-20-3(A) (1985) (permitting deferment of sentence in general). Petitioner successfully completed his term of probation, and the DWI charge was then dismissed with prejudice, as required by statute. *See* NMSA 1978, § 31-20-9 (1977). Petitioner filed a petition to expunge the arrest and public records of the DWI case pursuant to the Criminal Record Expungement Act (CREA). *See* NMSA 1978, §§ 29-3A-1 to -9 (2019, as amended through 2023). The Department of Public Safety (DPS) and the District Attorney for the Second Judicial District (District Attorney) objected to the petition. The relevant facts are undisputed. The only disputed question in the district court and in this Court is a purely legal one of first impression: Did our Legislature intend for records of a first DWI case that was dismissed after successful completion of a deferred sentence to be eligible for expungement under CREA? The district court concluded that the answer was no and denied the

expungement petition.[1] Like the district court, we have not found a clear answer in the plain meaning of the words in the statutes. However, we interpret the statutes differently than the district court did, and we conclude that the answer is yes. We therefore reverse and remand for further proceedings.

**DISCUSSION**

{2}      The answer to the question presented hinges on the interpretation of statutes, which we review de novo. *See State v. Romero*, 2026-NMCA-003, ¶ 5, 584 P.3d 921. When we interpret statutes, "our goal and guiding principle is to give effect to the intent of the Legislature," *Grisham v. Romero*, 2021-NMSC-009, ¶ 23, 483 P.3d

---

[1]The District Attorney argues that Petitioner failed to preserve his claim of error because the district court referred this case to a special master pursuant to Rule 1-053 NMRA and Petitioner did not object to the special master's report and recommendation. We disagree. The referral to the special master occurred only after the district court denied the expungement petition in a final order, ruling against Petitioner on the same legal question presented on appeal; after Petitioner moved to reconsider the dismissal; and after both the District Attorney and DPS responded to the motion to reconsider. The referral was for the purpose of resolving the motion to reconsider—that is, for the purpose of determining whether the district court erred by ruling against Petitioner on the question presented on appeal. The special master agreed with the district court's ruling, and the district court then adhered to its original ruling. All three purposes of the preservation requirement in Rule 12-321(A) NMRA were served by the petition and the motion to reconsider, which (1) allowed DPS and the District Attorney "a fair opportunity to respond" and explain why the petition should be denied, (2) "alert[ed] the district court to [the] claim of error so that any mistake c[ould] be corrected at that time," and (3) developed a record sufficient for appellate review. *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. We see no added value in requiring Petitioner to restate his position on a question of law specifically ruled upon twice by the district court, once before the special master's report was filed and again after it was filed.

545, and, in seeking out that intent, "the statute's plain language [is] our primary guide." *Bolen v. N.M. Racing Comm'n*, 2025-NMSC-034, ¶ 16, 578 P.3d 1121; *see also* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."). We must not "read[] statutes in isolation" or "read[] selected snippets of a statute in isolation" because doing so increases the likelihood that we will misunderstand what our Legislature intended. *Ferlic v. Mesilla Valley Reg'l Dispatch Auth.*, 2025-NMSC-028, ¶ 20, 578 P.3d 1051. Said simply, context matters. *See State v. Vest*, 2021-NMSC-020, ¶ 18, 488 P.3d 626.

{3}     The context here goes beyond CREA, as we will explain later, but we begin with CREA because it is the act at the center of this appeal. CREA defines "expungement" as "removal from access to the general public of a notation of an arrest, complaint, indictment, information, plea of guilty, conviction, acquittal, dismissal or discharge record, including a record posted on a publicly accessible court, corrections or law enforcement internet website." Section 29-3A-2(B). The two key statutes in this appeal—Sections 29-3A-4 and 29-3A-5—address, among other things, a threshold issue that arises when a person seeks expungement: whether the outcome of the underlying case and the offense in that case make the person ineligible for expungement. We refer to these statutes as Section 4, which applies to people without convictions, and Section 5, which applies to people with convictions. This distinction, drawn in the structure and text of CREA, has significant legal

consequences. *See State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022 (requiring examination of "the overall structure of the statute and its function in the comprehensive legislative scheme").

{4}     Section 4(A) authorizes a petition for expungement to be filed by "a person released [(1)] *without conviction* for [(2)] a violation of a municipal ordinance, misdemeanor, felony, penalty assessments under the Criminal Code [NMSA 1978, §§ 30-1-1 to -53-1 (1882, as amended through 2026)] and the Motor Vehicle Code [NMSA 1978, § 66-1-1 (1978) (identifying Chapter 66, Articles 1 through 8 as the Motor Vehicle Code, except NMSA 1978, § 66-7-102.1 (2003))] *or violations and deferred sentences under the Motor Vehicle Code*." (Emphasis added.) If a person meets these two threshold requirements and at least one year has passed since "the date of the final disposition in the [underlying] case," § 29-3A-4(A), then, under Section 4(E), the court "shall issue an order" of expungement so long as "no other charge or proceeding is pending against the [person]." There is no language in Section 4 disqualifying a person based on the nature of the offense involved in the underlying case.

{5}     Section 5(A) permits expungement for "[a] person *convicted of* a violation of a municipal ordinance, misdemeanor or felony, following the completion of the person's sentence and the payment of any fines or fees owed to the state for the conviction." (Emphasis added.) But people who have been convicted of certain types

of offenses are disqualified. Specifically, Section 5(G) states that Section 5(A) "do[es] not apply to an offense committed against a child, an offense that caused great bodily harm or death to another person, a sex offense as defined in [NMSA 1978,] Section 29-11A-3 [(2013)], embezzlement pursuant to [NMSA 1978,] Section 30-16-8 [(2025)] *or an offense involving driving while under the influence of intoxicating liquor or drugs*." (Emphasis added.) A person whose conviction is not disqualifying under Section 5(G) based on the nature of their offense may obtain an expungement order, but their path is more difficult than the path for a person who has no conviction and is therefore permitted to petition under Section 4.[2]

{6}     This statutory structure provides important context and frames the question presented: When a person successfully completes the terms of their deferred sentence for a first DWI and has their case dismissed, may they seek expungement under Section 4 or are they instead prohibited from seeking expungement under Section 5? Petitioner argues that he may seek expungement pursuant to Section 4 because he satisfies both of the Section 4(A) threshold requirements: (1) his deferred sentence for violating the DWI statute, which is part of the Motor Vehicle Code

---

[2]In addition to having no other charge or proceeding currently pending against them, *see* § 29-3A-5(C)(1), a person who has been convicted must have no additional conviction for a specific number of years set by statute based on the nature of the underlying offense. *Id.* (C)(4). They must also have fulfilled any victim restitution requirements. *Id.* (C)(3). And the district court must find that "justice will be served by an order to expunge." *Id.* (E). Before determining whether expungement will serve justice, the district court must consider several factors. *See id.* (B), (C)(2), (E).

(MVC), is a "violation[] and deferred sentence[] under the [MVC];" and (2) he was "released without conviction" when he successfully completed his deferred sentence and had his DWI case dismissed. DPS and the District Attorney focus on the second requirement. They argue that Petitioner's successfully completed deferred sentence is a conviction and that he therefore may not seek expungement under Section 4, and that his conviction also disqualifies him under Section 5(G) because his offense was DWI. We discuss each threshold requirement in turn, keeping the entire statutory scheme in focus and ultimately finding harmony within CREA and between CREA and the MVC. *See Bolen*, 2025-NMSC-034, ¶ 20 (requiring harmonious reading of statutes); *Vest*, 2021-NMSC-020, ¶ 18 (prohibiting decontextualization of statutory language).

{7}     We think the first requirement is met based on a straightforward application of the plain meaning of the statutory text to the undisputed facts. It is undisputed that Petitioner received a deferred sentence for a first violation of the DWI statute, which is part of the MVC. *See* § 66-1-1 (identifying Chapter 66, Articles 1 through 8, except NMSA 1978, Section 66-7-102.1, as the MVC). Petitioner's violation of the DWI statute and deferred sentence therefore appears to be a "violation[] and deferred sentence[] under the [MVC]." Section 29-3A-4(A). This statutory language broadly encompasses all deferred sentences for violations of the MVC; our Legislature did not limit the reach of the statute by creating an exception for DWI. Our Legislature

knows how to include limiting words, *see State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753, and when it chooses not to include such words, it is not the role of the courts to add them, *see State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579.

{8} We considered the possibility that our Legislature intended to implicitly limit the scope of the phrase. Specifically, did our Legislature intend for "violations" to have a technical meaning that includes some offenses set forth in the MVC but excludes others, such as DWI? We do not think so. "Violation" is not defined in CREA; the MVC does not include a definition that our Legislature might have intended to incorporate into Section 4(A); and we have found no other clear and explicit legislative intent to give the word "violation" anything other than its ordinary meaning. We therefore rely on the ordinary meaning found in the dictionary, *see Vest*, 2021-NMSC-020, ¶ 14, which, in the legal context, is "[a]n infraction or breach of the law" or "[t]he act of breaking or dishonoring the law; the contravention of a right or duty." *Violation*, *Black's Law Dictionary* (12th ed. 2024). This definition is broad. It includes the breaking of any law; it is not limited to a specific type of law. The only limitation imposed by the statute is in the language that modifies "violation"; the violation must be "under the [MVC]." This indicates that in Section 4 our Legislature used "violation" as an umbrella term that means an instance of breaking a statute that is part of the MVC. There are no words in the

statute that indicate, or even hint at, a legislative intent to limit "violations" to some specific category of the statutes in the MVC. The statute does not say, for example, "violations *of traffic laws* and deferred sentences under the MVC," even though "traffic laws" are a specific category of statutes within the MVC. *See* NMSA 1978, § 66-7-3 (1978) (providing that, unless otherwise specified, "it is a misdemeanor for any person to do any act forbidden or fail to perform any act required" by the traffic laws in Article 7 of the MVC). Had our Legislature intended to limit "violations" in this way or any other way, it could have done so, but it did not. *See Greenwood*, 2012-NMCA-017, ¶ 38. We conclude that a violation and deferred sentence for a DWI is a "violation[] and deferred sentence[] under the [MVC]." Section 29-3A-4(A).

{9}     But that conclusion does not end our analysis because we must still determine whether Petitioner meets the second requirement—whether he was "released without conviction." Section 29-3A-4(A). If Petitioner has a "conviction," he is ineligible to seek expungement under any provision of CREA; he is ineligible under Section 4(A) because it only applies to people without convictions, and he is ineligible under Section 5 because it prohibits expungement when a person has a conviction for DWI. The question is whether our Legislature intended for "conviction" to include the dismissal of a first DWI charge after successful completion of a deferred sentence.

{10}   We find no clear answer when we study the text of CREA. "Conviction" is not defined in CREA. *See* § 29-3A-2 (providing definitions for various terms). Although the text of Section 4(E) provides some information about what does and does not amount to a conviction, it does not clearly answer the question presented here. Section 4(E) indicates that "released without a conviction" encompasses several categories of case dispositions:

> (1) an acquittal or finding of not guilty;
> (2) a nolle prosequi, a no bill or other dismissal;
> (3) a referral to a preprosecution diversion program;
> (4) an order of conditional discharge pursuant to [NMSA 1978,] Section 31-20-13 [(1994)]; or
> (5) the proceedings were otherwise discharged.

Deferred sentences are neither specifically excluded nor specifically included. However, the provision includes some language—"other dismissal" and "the proceedings were otherwise discharged"—that could reasonably be read to encompass the dismissal of a first DWI charge after successful completion of a deferred sentence. *See* § 31-20-9 ("Whenever the period of deferment expires, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime, [and] the court shall enter a dismissal of the criminal charges."). The ambiguity in Section 4(E) and the absence of a definition of "conviction" in CREA require us to go beyond the plain meaning of the text of CREA and construe the statute.

{11}     One canon of construction turns out to be especially useful in discerning legislative intent here: We presume that when our Legislature enacted a statute, it was "well informed and aware of existing statutory and common law," *State v. Thompson*, 2022-NMSC-023, ¶ 18, 521 P.3d 64, and "did not intend to enact a law inconsistent with other law," *State v. Herbstman*, 1999-NMCA-014, ¶ 18, 126 N.M. 683, 974 P.2d 177. This canon fits well here because at the time CREA was enacted, our Legislature and appellate courts had developed a body of law on the topic of what does and does not amount to a "conviction," and that body of law specifically addressed whether a deferred sentence amounts to a "conviction" in various contexts.

{12}     In some contexts, it was clear that a successfully completed deferred sentence is a "conviction." Our Supreme Court had held that a deferred sentence for a felony is a conviction for purposes of determining sentencing enhancements under the habitual offender statute, *see Padilla v. State*, 1977-NMSC-063, 90 N.M. 664, 568 P.2d 190, and this Court had held that a deferred sentence for a sex offense is a conviction that triggers the requirements of the Sex Offender Registration and Notification Act, *see State v. Brothers*, 2002-NMCA-110, ¶¶ 4-24, 133 N.M. 36, 59 P.3d 1268. Both holdings had the same rationale. The courts reasoned that a finding of guilt is a "conviction," regardless of whether a sentence is imposed; and, because a deferred sentence involves a finding of guilt, it is a "conviction," even when no

sentence was imposed, and it remains a conviction even after the defendant successfully completes the deferred sentence and the case is dismissed. *See Padilla*, 1977-NMSC-063, ¶¶ 7-11; *Brothers*, 2002-NMCA-110, ¶¶ 7-15; *see generally* § 31-20-3 (allowing a court to "enter an order deferring the imposition of sentence" after "entry of a judgment of conviction").

{13}     But, crucially, our Legislature had made clear, well before it enacted CREA, that a successfully completed deferred sentence is generally not a conviction in the context of violations of the MVC.[3] "Conviction," as defined in the MVC, "does not include . . . a deferred sentence when the terms of the deferred sentence are met." NMSA 1978, § 66-1-4.3(N)(2) (2009, amended 2024). We recognize that this definition is not technically binding because it is part of the MVC rather than CREA. *See Sunwest Bank of Albuquerque v. Nelson*, 1998-NMSC-012, ¶ 15, 125 N.M. 170, 958 P.2d 740 (recognizing the meaning of a word in one act is not controlled by the definitions of that word in other acts). However, we are persuaded that our

---

[3]Under the MVC, although the general rule is that deferred sentences are not convictions, our Legislature created an exception that does not apply here: "A deferred sentence [for a first DWI] shall be considered a first conviction for the purpose of determining subsequent convictions." Section 66-8-102(E). Under this exception, a successfully completed deferred sentence for a first DWI is a conviction only for the narrow purpose of sentencing in any subsequent case involving DWI, vehicular homicide, or great bodily harm by vehicle. *See* § *id.* (F)-(K) (increasing penalties for DWI based on how many prior DWI convictions a person has); NMSA 1978, § 66-8-101(F), (G) (2016) (increasing penalties for the offenses of homicide by vehicle and great bodily harm by vehicle if a person has a prior DWI conviction within the preceding ten years).

Legislature intended to incorporate the MVC definition when it enacted CREA. We presume that our Legislature was familiar with the definition of "conviction" in the MVC when it enacted CREA. *See State v. Quintana*, 2021-NMSC-013, ¶ 19, 485 P.3d 215 (presuming that our Legislature was familiar with the terminology of one act when it enacted a different act on the same subject matter). And, importantly, this presumption is supported by CREA itself: Section 4(A) explicitly refers to the MVC—"violations and deferred sentences under the [MVC]"—and the MVC definition aligns well with the substance of Section 4(A). Because Section 4(A) applies only when there is no conviction, it makes sense for Section 4(A) to include categories of cases that are not convictions. It therefore makes sense to include the category "violations and deferred sentences under the [MVC]" only if our Legislature intended for the MVC definition of "conviction" to apply. That category does not belong in Section 4(A) if our Legislature intended to adopt the definition of "conviction" used in the context of the sex offender registration and habitual offender sentencing statutes. Because the definition used in those contexts includes *all* deferred sentences, using that definition in the context of CREA would render the phrase "violations and deferred sentences under the [MVC]" meaningless surplusage. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 32, 117 N.M. 346, 871 P.2d 1352 ("[T]he [L]egislature is presumed not to have used any surplus words in a statute; each word is to be given meaning."); *State v. Rivera*, 2004-

NMSC-001, ¶ 18, 134 N.M. 768, 82 P.3d 939 ("We are generally unwilling to construe one provision of a statute in a manner that would make other provisions null or superfluous."). What purpose would be served by including these words in Section 4(A) if violations and deferred sentences under the MVC are, by definition, always convictions and are therefore categorically ineligible for expungement under both Section 4 and Section 5? We can think of no plausible purpose.

{14}    We can, however, think of a logical, straightforward purpose for including MVC deferred sentences in Section 4(A) if our Legislature intended to incorporate the MVC definition of "conviction": Our Legislature intended to ensure that CREA accurately reflects the law about what amounts to a conviction and what does not. And this purpose lines up with the presumption of legislative awareness of existing law and intent to legislate consistent with that law. *See Thompson*, 2022-NMSC-023, ¶ 18; *Quintana*, 2021-NMSC-013, ¶ 19; *Herbstman*, 1999-NMCA-014, ¶ 18. Under the law on the books when CREA was enacted and still today, whether a deferred sentence amounts to a conviction is not a yes-or-no question. The shortest answer is the familiar lawyerly hedge: it depends. The longer, more helpful answer is the one that our Legislature appears to have been aware of and to have codified in Section 4(A). Section 4(A) reflects the reality that, although a successfully completed deferred sentence is a conviction in certain contexts and for certain purposes, *see Padilla*, 1977-NMSC-063, ¶¶ 7-11; *Brothers*, 2002-NMCA-110, ¶¶ 7-

15; § 66-8-102(E), in the context of MVC violations, a successfully completed deferred sentence is generally not a conviction.[4] *See* § 66-1-4.3(N)(2).

{15}   This reading of Section 4(A) is also supported by its history. *See Bolen*, 2025-NMSC-034, ¶ 17 (recognizing that the history of a statute may be helpful in discerning legislative intent); *State v. Maestas*, 2007-NMSC-001, ¶ 17, 140 N.M. 836, 149 P.3d 933 (recognizing that the history of a statute includes amendments). The original version of Section 4(A), enacted in 2019, did not mention the MVC. The original version used the phrase "a person released without conviction for a violation of a municipal ordinance, misdemeanor or felony." Section 29-3A-4(A) (2019). The MVC was referred to for the first time in 2021, when our Legislature amended Section 4(A) by adding two phrases: "violations and deferred sentences under the [MVC]" and "penalty assessments under the Criminal Code . . . and the

---

[4]DPS asserts that "conviction" is defined in the Criminal Code in a way that clearly includes a deferred sentence for a first DWI. We disagree. The statute relied on by DPS, NMSA 1978, § 30-1-11 (1963), is not a definitional statute. The definitions in the Criminal Code are in Section 30-1-12. Section 30-1-12 does not include a definition of conviction. Nor does Section 30-1-11; instead, it codifies two rules of criminal law that are basic and important but inapplicable here: (1) a person may be sentenced only if they have been convicted, and (2) a person may be convicted only if they have been found guilty by a jury or judge, or have pled guilty or no contest. *See* § 30-1-11. Neither rule suggests an answer to the question presented in this appeal. The first rule says nothing about what amounts to a conviction. The second rule describes procedural events that must occur before a court has the authority to convict someone. But it tells us nothing about whether a particular case disposition—such as a deferred sentence—does or does not amount to a conviction.

[MVC]." 2021 N.M. Laws, 1st Spec. Sess., ch. 3, § 4(A). Significantly, as we will explain, each added phrase matches what our Legislature had already said in other statutes about specific types of case dispositions not being considered convictions. The pair of added phrases indicate that our Legislature's intent was to make clear that what amounts to a conviction under CREA aligns with existing law on that topic. The first added phrase matches the definition of conviction in the MVC, as described above.

{16}     The second added phrase matches a statute regarding penalty assessments that was enacted in 2019: "Payment of a fine pursuant to a penalty assessment citation shall not be considered a criminal conviction." NMSA 1978, § 31-19A-1(A) (2019). This provision was part of the bill in which our Legislature transformed possession of up to one-half ounce of marijuana and possession of certain types of drug paraphernalia from petty misdemeanors into penalty assessments. *See* 2019 N.M. Laws, ch. 217, § 1; *compare* NMSA 1978, § 30-31-23(B)(1) (2011, amended 2021), *with* § 30-31-23(B)(1) (2019); *compare* NMSA 1978, § 30-31-25.1(A), (C) (2001, amended 2022), *with* § 30-31-25.1(A), (C) (2019). With these 2019 statutory changes, these acts of possession ceased being violations for which a person could receive a criminal sentence such as imprisonment; they became noncriminal

violations penalized by fines.[5] The decriminalization of these acts explains why our Legislature chose to make clear in CREA that penalty assessments are not convictions for expungement purposes. The clarity was achieved by adding the language regarding penalty assessments to Section 4(A). Because penalty assessments are not convictions, our Legislature added them to Section 4(A), which governs only cases in which there is no conviction.

{17}    This history and the text of the pertinent statutory provisions strongly suggest that when our Legislature added the two new phrases in 2021, its intent was to ensure that CREA is consistent with existing law as to what amounts to a conviction and what does not—a distinction with significant consequences in the context of expungement, as we have explained.

{18}    This understanding of the intent of our Legislature gains strength when we read the statutes holistically, seeking harmony rather than discord. *See Smith*, 2004-NMSC-032, ¶ 10 ("Whenever possible, we must read different legislative enactments as harmonious instead of as contradicting one another." (internal quotation marks and citation omitted)). Harmony is found if successfully completed deferred sentences for DWI are not convictions for purposes of CREA. There is

---

[5]Pursuant to a subsequent statutory amendment, possession of marijuana and marijuana paraphernalia ceased being violations entirely. *See* 2021 N.M. Laws, 1st Spec. Sess., ch. 4, § 68 (amending Section 30-31-23, and removing marijuana from list of prohibited controlled substances).

harmony between CREA and the MVC because "conviction" means the same thing under both statutory schemes, as we have explained. And there is harmony within CREA. Section 4 does not conflict with Section 5. The two sections do not point to contradictory answers to the question presented in this appeal because only one of the sections applies: Section 4. A person who has successfully completed a deferred sentence for a first DWI may petition for expungement under Section 4, which applies because the person does not have a conviction and which does not disqualify a person based on the nature of the offense involved in the underlying case. Section 5 does not apply to this scenario; it applies only to people who have convictions, and the categorical disqualification in Section 5(G) only applies to people who were convicted of DWI and the other offenses listed in Section 5(G).[6]

{19} It is important to ask whether this interpretation of the statutes is consistent with what our Legislature sought to accomplish when it enacted CREA. *See Bolen*, 2025-NMSC-034, ¶ 17 (allowing courts to consider the legislative purpose "[t]o resolve uncertainty in the meaning of a statute"). But we find ourselves unable to

---

[6]The district court accepted and relied on DPS's argument that there is a conflict between Section 4 and Section 5; the conflict should be resolved by applying the general/specific rule of statutory interpretation; and Section 5 controls because it is the more specific of the two statutory provisions. Because we see no conflict between Section 4 and Section 5, we conclude that the general/specific rule does not apply. *See State v. Santillanes*, 2001-NMSC-018, ¶ 11, 130 N.M. 464, 27 P.3d 456 ("The general/specific statute rule provides a method to resolve an otherwise irreconcilable conflict between statutes by treating the specific statute as an exception to the general statute.").

answer this question with any confidence because, when we examine CREA, we do not see just one legislative goal advanced in a simple, straightforward manner. Instead, we see multiple goals that are in tension with each other to some extent. And although the text of CREA suggests that our Legislature weighed and balanced various interests in determining how best to resolve the tension and advance its goals, it is unclear exactly why it ultimately made all its policy choices. One obvious goal of expungement under CREA is preventing the public from having access to records of past cases under some circumstances, thereby reducing adverse consequences faced by people when the public can obtain the records. *See* § 29-3A-2(B) (defining "expungement" as "removal from access to the general public of" records); §§ 29-3A-4, -5 (describing criteria for expungement).[7] But another obvious goal is allowing the public to continue to have access to records of a person's past

---

[7]Employment consequences are among those our Legislature had in mind. CREA's expungement provisions relate to a provision of the Criminal Offender Employment Act (COEA), NMSA 1978, § 28-2-1 to 28-2-6 (1974, as amended through 2025). COEA includes a finding by our Legislature "that the public is best protected when criminal offenders or ex-convicts are given the opportunity to secure employment or to engage in a lawful trade, occupation or profession and that barriers to such employment should be removed to make rehabilitation feasible." Section 28-2-2. COEA was amended in the same 2021 bill that amended Section 4 of CREA in the manner we have already described. *See* 2021 N.M. Laws, 1st Spec. Sess., Ch. 3. One of the COEA provisions added in 2021 prohibits "criminal records" of "convictions that have been sealed, dismissed, expunged or pardoned" from being "used, distributed or disseminated in connection with an application for any public employment, license or other authority." Section 28-2-3.

cases under some circumstances. [8] *See* §§ 29-3A-4, -5 (describing criteria for expungement); *see also* § 29-3A-4(F) (allowing law enforcement agencies and courts to disclose copies of expunged records "upon order of the court"). Indeed, distinguishing between the circumstances under which the public should not have access to records and the circumstances under which it should have access is a critical function served by Sections 4 and 5. These distinctions are made by drawing policy lines. And when, as in this case, our Legislature's placement of a particular policy line is unclear from the plain meaning of the text of CREA, no single correct answer is dictated, or even suggested, by the overarching goals of CREA. Those goals could arguably support either outcome in this case, depending on how various policy considerations are weighed and balanced. We can do no more than guess at what our Legislature's policy reasons might have been, and guesses hazarded by a few judges about why our Legislature might have drawn a specific line in one place rather than another is not a solid foundation for statutory interpretation. In other words, interpreting a statute based on judicial speculation about the policy considerations that produced a particular line is not the same as applying the canon that we should interpret statutes to further the goals that our Legislature clearly sought to achieve. By relying on speculation, we would be substituting policy

---

[8]We discuss another obvious goal below: ensuring that expungement does not prevent the government from performing certain functions.

reasons that we think are wise and just for whatever actual policy reasons our Legislature thought were wise and just when it drew the lines in Sections 4 and 5. *See Maestas*, 2007-NMSC-001, ¶ 25 (declining to question the wisdom, policy, or justness of a legislative choice when the reasons for that choice were unclear); *State v. Cleve*, 1999-NMSC-017, ¶ 15, 127 N.M. 240, 980 P.2d 23 ("Our role in statutory interpretation is not to sculpt the most just law possible out of the words used by the Legislature."). So, although we are capable of imagining and articulating policy reasons that weigh in favor of allowing records of successfully completed deferred sentences for DWI to be expunged under certain circumstances, as well as policy reasons that weigh in favor of categorically prohibiting expungement of such records, we decline to rely on our imaginations to interpret the statutes.

{20} We have instead relied on the plain meaning of the words chosen by our Legislature to the extent that those words are helpful, mindful of the context in which they were written. Because the plain meaning does not clearly answer the question presented here, we have resolved the ambiguity based on canons of statutory interpretation that we find helpful in revealing clues about what our Legislature intended. And, for the reasons we have explained, these considerations collectively support the conclusion that our Legislature did not intend to categorically prohibit expungement of records when a person's charge for a first DWI has been dismissed after that person successfully completes a deferred sentence. Instead, we believe our

Legislature intended to permit expungement of such records if all the requirements of Section 4 are met.

{21}     This reading of the statutes, according to DPS, conflicts with—and would undermine—our Legislature's sentencing scheme for DWI, vehicular homicide, and great bodily injury by vehicle. DPS points out that "[a] deferred sentence [for a first DWI] shall be considered a first conviction for the purpose of determining subsequent convictions." Section 66-8-102(E). DPS argues that, if records regarding deferred sentences for DWI may be expunged, those records may not be relied upon to increase a sentence if the person is later convicted of DWI, vehicular homicide, or great bodily injury by vehicle. *See* § 66-8-102(F)-(K) (increasing penalties for DWI based on how many prior DWI convictions a person has); NMSA 1978, § 66-8-101(F), (G) (2016) (increasing penalties for the offenses of homicide by vehicle and great bodily harm by vehicle if a person has a prior DWI conviction within the preceding ten years). The district court agreed with DPS.

{22}     We do not share this view or this concern. DPS relies on a single phrase within a single provision of CREA without accounting for the remaining language in that provision or the other relevant provisions of CREA. When we consider context, as we must, we see no basis for concluding that our Legislature intended to ban the use of expunged records in subsequent sentencing proceedings. The phrase relied on by DPS is part of Section 29-3A-7: "Upon entry [of an] order to expunge, the

proceedings shall be treated as if they never occurred." It is true that this language—read broadly and out of context—could be interpreted to bar the use of expunged records of proceedings in a subsequent sentencing proceeding. But this approach to reading statutes is risky and frowned upon; we view it with skepticism because it depends on a "selected snippet[] of a statute in isolation." *Ferlic*, 2025-NMSC-028, ¶ 20; *see also Smith*, 2004-NMSC-032, ¶ 10 ("'[A] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:05, at 165 (6th ed., rev. 2000))). And we decline to accept the interpretation offered by DPS because we believe it is inconsistent with the other language in Section 29-3A-7 and with a holistic reading of CREA.

{23}    The other language in Section 29-3A-7 says nothing about the use of expunged records in sentencing proceedings. Some of the language pertains to how the person whose records have been expunged and how officials who keep the records may respond to inquiries about the existence of the expunged record: "[O]fficials and the person who received the order to expunge may reply to an inquiry that no record exists with respect to the person." Section 29-3A-7. The statute goes on to create an exception that requires disclosure of expunged records in connection with certain employment matters related to regulated financial

institutions. *See id.* Considering all the language in Section 29-3A-7, we do not read the statute to erase the proceedings in the underlying case for all purposes or to prohibit the use of expunged records for the particular purpose of sentencing in a subsequent case. Instead, we read Section 29-3A-7 as an example of the nuanced treatment of expungement that we see when we zoom out and consider all the relevant provisions of CREA.

{24} Reading the act holistically, we believe our Legislature intended for expungement to remove public access to records under certain circumstances, but also to allow expunged records to be retained and used for certain purposes. Our Legislature defines "expungement" as "removal *from access to the general public* of a notation of an arrest, complaint, indictment, information, plea of guilty, conviction, acquittal, dismissal or discharge record, including a record posted on a publicly accessible court, corrections or law enforcement internet website." Section 29-3A-2(B) (emphasis added). The definition says nothing about preventing government entities, such as law enforcement agencies and courts, from retaining and using records. And other provisions of CREA explicitly recognize that government entities may retain and use expunged records and may even release them when a court orders them to do so. *See* § 29-3A-2(A) (defining "arrest records" to exclude "[DWI] citations maintained by the taxation and revenue department," "computer-aided dispatch information," and "log books relating to breath alcohol

testing equipment"); § 29-3A-2(C) (defining "public records" to exclude various types of records, including certain records maintained by the Children, Youth and Families Department, the Human Services Department, and the Public Education Department); § 29-3A-4(F) (stating that an expungement order "prohibit[s] all relevant law enforcement agencies and courts from releasing copies of the records to any person, except upon order of the court"). These provisions undermine the argument made by DPS in a general way because they make clear that the snippet of statutory language relied upon by DPS should not be read broadly to mean that "the proceedings shall be treated as if they never occurred" *by everyone and for all purposes*. *See* § 29-3A-7. And one provision of CREA appears to directly contradict the argument made by DPS: The definition of "public records" excludes "the file of a district attorney or attorney general maintained as a confidential record for law enforcement purposes and not open for inspection by members of the public." Section 29-3A-2(C)(2). Based on its plain meaning, Section 29-3A-2(C)(2) seems to ensure that even when an expungement order is entered regarding records in a particular case, prosecutors may retain and use those records for law enforcement purposes, including sentencing proceedings in subsequent cases, so long as the public is not allowed to inspect the records. Neither DPS nor the District Attorney has argued for an alternative interpretation.

**{25}** We are unpersuaded by DPS's argument that if records from a case are expunged, prosecutors are prohibited from using those records in sentencing proceedings in subsequent cases. We instead believe that our interpretation of CREA is in harmony with the MVC sentencing statutes relied upon by DPS: Records of a successfully completed deferred sentence may be expunged under Section 4 of CREA, but those records may still be retained and relied upon by prosecutors to establish that the person has "a first conviction for the purpose of determining subsequent convictions." Section 66-8-102(E).

**CONCLUSION**

**{26}** We reverse the order denying the expungement petition and remand this case to the district court for further proceedings consistent with this opinion.

**{27}** **IT IS SO ORDERED.**

_____
**ZACHARY A. IVES, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Chief Judge**

_____
**J. MILES HANISEE, Judge**